1  Jennifer A. Kearns (SBN 125588)
   **DUANE MORRIS LLP**
2  750 B Street, Suite 2900
   San Diego, CA 92101-4681
3  Telephone: 619 744 2200
   Facsimile:  619 744 2201
4  E-mail:  jakearns@duanemorris.com

5  Attorneys for Defendant
   Digital Intelligence Systems, LLC
6

7              **UNITED STATES DISTRICT COURT**

8            **SOUTHERN DISTRICT OF CALIFORNIA**

9  BERNARDO BUCHSBAUM,                    Case No.  3:20-cv-00706-BAS-AGS
   Individually and on behalf of all others
10 similarly situated,                    **DEFENDANT DIGITAL
                                          INTELLIGENCE SYSTEMS, LLC'S
11                  Plaintiffs,           REPLY IN SUPPORT OF ITS
            v.                            MOTION TO COMPEL
12                                        ARBITRATION AND STAY
   DIGITAL INTELLIGENCE                   ACTION PENDING COMPLETION
13 SYSTEMS, LLC, a Delaware limited       OF ARBITRATION**
   liability company; T-MOBILE USA,
14 INC. a Delaware corporation; and
   DOES 1 through 50, inclusive,          Date: July 13, 2020
15                                        Ctrm:  4B
                  Defendants.             Judge: Cynthia Bashant
16
                                          **NO ORAL ARGUMENT UNLESS
17                                        REQUESTED BY THE COURT**

18                                        Complaint Filed:   March 4, 2020

19

20

21

22

23

24

25

26

27

28

DM2\12803842.3

DEFENDANT'S REPLY ISO ITS MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING COMPLETION OF
ARBITRATION
                                                        CASE NO.: 3:20-CV-00706-BAS-AGS

## I.      Introduction

Buchsbaum does not dispute that he entered into an arbitration agreement with DISYS, nor that the agreement applies to his claims in this case.  Rather, he argues that he should not be forced to arbitrate his claims because (1) DISYS waived its right to arbitrate, or alternately (2) the agreement is unenforceable because it is unconscionable, and (3) the unconscionable provisions cannot be severed.  These arguments all fail for the reasons discussed below.

## II.     DISYS Did Not Waive Its Right to Seek Arbitration

Buchsbaum contends that DISYS waived its right to arbitrate by: (1) failing to plead arbitration as an affirmative defense in its answer or notice of removal; (2) removing the case to federal court prior to requesting arbitration; and (3) moving to compel arbitration after the parties participated in the Rule 26(f) conference, exchanged initial disclosures, and after Buchsbaum's counsel allegedly started preparing for the ENE and drafting discovery.  (Opp'n pp. 10-12.)  None of these facts establishes waiver.

A party seeking to prove that the right to compel arbitration has been waived must demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) intentional acts inconsistent with that existing right; <u>and</u> (3) prejudice to the person opposing arbitration from such inconsistent acts."  *Newirth by & through Newirth v. Aegis Senior Communities, LLC*, 931 F.3d 935, 940 (9th Cir. 2019) (emphasis added).  Because waiver of a contractual right to arbitration is not favored, "any party arguing waiver of arbitration bears a heavy burden of proof."  *Id.*

On the first prong, DISYS's counsel has explained that she moved for arbitration promptly after learning of the existence of the arbitration agreement.  See Declaration of J. Kearns In Support of Mot. to Compel Arbitration ("Kearns Decl.") ¶ 2.  DISYS could not have known of its "right to compel arbitration" until the arbitration agreement was presented to and discussed with counsel.  However, even

1

assuming *arguendo* that DISYS had "knowledge" of its right to compel arbitration from the outset of this case (as Buchsbaum urges), Buchsbaum still cannot meet his heavy burden because he cannot prove the other two elements of waiver.

On the second prong and third prongs, "[t]here is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate[.]" *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Instead, courts consider whether the totality of the parties' actions "indicate a conscious decision . . . to seek judicial judgment on the merits of [the] arbitrable claims, which would be inconsistent with a right to arbitrate." *Id.* Furthermore, prejudice results only "[w]hen a party has expended considerable time and money due to the opposing party's failure to timely move for arbitration and is then deprived of the benefits for which it has paid by a belated motion to compel[.]" *Id.* at 1127.

DISYS moved to compel arbitration three months and four days after Buchsbaum filed his Complaint in state court, less than two months after DISYS removed the case to Federal Court on CAFA grounds, and just two weeks after Buchsbaum refused DISYS's request to arbitrate. Prior to DISYS moving to compel arbitration, no substantive motions were filed, the ENE was postponed due to COVID-19 restrictions, and the parties did not exchange any discovery beyond initial disclosures. As this Court found in a different case presenting similar circumstances less than three months ago, these facts do not support a waiver. In *Sonico v. Charter Communications LLC*, No. 19CV1842 BAS(LL) (S.D. Cal. April 20, 2020), this Court wrote:

> Here, Defendants moved to compel arbitration exactly three months after Plaintiff commenced this action in state court, and one month after Plaintiff refused to submit to arbitration. (See Compl.; Mot.) This delay does not support a finding of waiver. *See also Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*, No. 8:19-CV-00642-JLS-JDE, 2020 WL 620294, at *9 (C.D. Cal. Jan. 9, 2020) (finding a three-month delay in filing a motion to compel arbitration "wholly insufficient to support a finding of waiver" and noting that when finding waiver, "the Ninth Circuit identified delays ranging from nine to eighteen months") (citing *Kelly v. Pub. Util. Dist. No. 2 of Grant Cty.*, 552 F. App'x 663, 664 (9th Cir. 2014)). Moreover, in the three months that elapsed between the filing of the case and Defendants' Motion, the parties submitted a four-page Rule 26(f) Report

1
2
3
4

(ECF No. 12) and a protective order that Defendants clearly stated was contingent on "the outcome of Defendant[s'] forthcoming motion to compel arbitration[.]"  (ECF No. 17 at 2.)  Defendants' conduct therefore evinces no "conscious decision" to litigate arbitrable claims in federal court, nor has any significant amount of time and money has been expended on substantive motions such that Plaintiff has been prejudiced. *Van Ness Townhouses*, 862 F.2d at 759; *see also Kelly*, 552 F. App'x at 664; *Martin*, 829 F.3d at 1127.

5
6
7
8
9

In any event, much of Defendants' actions cited by Plaintiff appear to be responsive to court orders.  Defendants attempted to continue the Early Neutral Evaluation (ENE) specifically because the parties were engaged in an ongoing meet-and-confer about arbitration, but the request was denied, necessitating their appearance and meaningful participation at the conference.  (ECF Nos. 10, 11.)  Further, after the ENE, the Magistrate Judge Lopez set a deadline of November 20, 2019 for the parties to file the joint motion for a protective order; Defendants filed their Motion to Compel Arbitration the next day.  (ECF Nos. 17, 19.)  The Court does not find such actions, taken to comply with court orders standard in the preliminary stages of a case, sufficient for waiver.

10
11
12
13
14
15
16
17
18

Lastly, "where the defendant has not engaged in protracted litigation or obtained discovery," **a defendant's decision to remove an action to federal court has generally not been considered inconsistent with the right to arbitrate and does not prejudice the opposing party**. *Moffett v. Recording Radio Film Connection, Inc.*, No. CV 19-3319 PSG (KSx), 2019 WL 6898955, at *6 (C.D. Cal. Oct. 4, 2019) (quoting *DeMartini v. Johns*, No. 3:12-CV-03929-JCS, 2012 WL 4808448, at *5 (N.D. Cal. Oct. 9, 2012)).  This is particularly true in cases where a defendant removed an action pursuant to CAFA.  *See Morvant v. P.F. Chang's China Bistro, Inc.*, 870 F. Supp. 2d 831, 846 (N.D. Cal. 2012) ("Plaintiffs argue that removal pursuant to CAFA is logically irreconcilable with the intent to arbitrate based upon an erroneous assumption that such removal amounts to an admission that this action is suitable to class treatment . . . [r]emoval does not serve as an admission of those allegations"); *see also Armstrong v. Michaels Stores, Inc.*, No. 17-CV-06540-LHK, 2018 WL 6505997, at *10 (N.D. Cal. Dec. 11, 2018) (finding removal under CAFA cannot constitute waiver because such class actions are "subject to the original jurisdiction" of federal courts and thus "can *only* be heard in federal court").

19
20
21

Considering the totality of Defendants' actions, the Court does not conclude that Defendants have acted inconsistently with their right to arbitrate or otherwise taken advantage of litigating their claims in court, resulting in any prejudice to Plaintiff.  Accordingly, the Court finds Defendants have not waived their right to arbitration.

22

*Id.* at *7-9 (emphasis added) (footnotes omitted).

23
24
25
26
27
28

Just as this Court recognized in *Sonico*, not only does Buchsbaum fail to show that DISYS took advantage of the litigation process prior to requesting arbitration, he also cannot show **any** prejudice from the three months that lapsed between the filing of his complaint and DISYS's motion to compel arbitration.  Buchsbaum argues that in those three months, his attorneys prepared for the ENE, participated in the Rule 26(f) conference, and started drafting written discovery that they have not yet sent.

1  However, this is hardly the type of time-intensive litigation prep work that constitutes

2  "prejudice" in the above-cited cases.  More significantly, with the possible exception

3  of the Rule 26(f) conference – which was ordered by Judge Schopler – these are all

4  steps that Buchsbaum and his attorneys will need to take to prepare for arbitration and

5  the mediation that Buchsbaum is now requesting (and DISYS is happy to participate

6  in).  (See Opp'n p. 22.)  They have not "wasted" any time, and Buchsbaum cannot

7  establish any prejudice.

8  ## III.  The Arbitration Agreement Is Enforceable

9  Buchsbaum alternatively argues that the arbitration is unconscionable and

10  therefore unenforceable.  However, he cannot show either procedural or substantive

11  unconscionability, both of which are required to prevent the agreement's enforcement.

12  See *Shroyer v. New Cingular Wireless Servs., Inc.*, 498 F.3d 976, 981 (9th Cir. 2007).

13  ### A.  The Agreement is Procedurally Conscionable

14  Buchsbaum argues that the arbitration agreement is procedurally

15  unconscionable because it was presented to him as a condition of employment and

16  thus was a contract of adhesion.  (Opp'n pp. 14-15.)  Even assuming *arguendo* that

17  the arbitration agreement was a contract of adhesion, "[a] contract of adhesion is not

18  per se unenforceable."  *Dotson v. Amgen*, 181 Cal. App. 4th 975, 981 (2010).

19  Furthermore, Buchsbaum has not even attempted to argue the element of surprise.

20  *Cf. Tiri v. Lucky Chances*, 226 Cal. App. 4th 231, 245 (2014) (holding that

21  procedural unconscionability focuses on two factors: oppression and surprise).

22  A third factor that this Court may consider is choice, and this factor also weighs

23  in favor of enforcing the arbitration agreement.  In a 2016 Order granting an

24  employer's motion to compel arbitration pursuant to a "take-it-or-leave-it" agreement,

25  Judge Miller of this District reasoned:

26  JCP, by any stretch of the imagination, does not control the labor market nor
     possess monopoly power to lock Plaintiffs out of the labor market. JCP is one

27  employer among thousands of employers in San Diego County.  Plaintiffs were,
     and are, free to seek private or government employment of their choice. Plaintiffs

28  were presented with sufficient information upon which prospective

1
2
employees could make an informed decision whether to accept employment with JCP, subject to an arbitration provision or, alternatively, seek employment elsewhere. This factor weighs against a finding of procedural unconscionability.

3
4
*Knatt v. J. C. Penney Corporation, Inc.*, No. 15CV2516 JM(KSC), 2016 WL 1241550, at *2–3 (S.D. Cal. Mar. 30, 2016).  The same is true here.

5
6
7
8
9
10
11
        In sum, under the sliding scale of unconscionability articulated by the California Supreme Court in *Armendariz v. Found. Health Psychcare Servs*., 24 Cal. 4th 83, 113-14 (2000), any modicum of procedural unconscionability in the arbitration agreement would be so minor that Buchsbaum would have to make a **substantial** showing of substantive unconscionability in order to avoid the agreement.  He has not done so; thus this Court should enforce the agreement and compel his claims to arbitration.

12
### B.      The Agreement is Substantively Conscionable

13
14
15
16
        Buchsbaum argues that the arbitration agreement is substantively unconscionable because it lacks mutuality, unfairly benefits DISYS, and contains an illegal choice of law and forum selection provision.  (Opp'n pp. 15-20.)  None of these arguments holds up.

17
### 1.      The Agreement Binds Buchsbaum and DISYS

18
19
20
21
22
23
24
25
26
27
        First, Buchsbaum argues that the arbitration agreement on its face only binds Buchsbaum, not DISYS.  This argument is belied by the plain text of the agreement. See Declaration of Ryan Duckswitz In Support of Mot. to Compel Arbitration ("Duckwitz Decl."), Ex. 1.  Even if certain phrases of the arbitration agreement, taken in isolation, could suggest a unilateral contract (Buchsbaum seizes upon the phrase "Employee agrees" in Section 1), this Court must interpret the agreement as a whole. *See* Cal. Civ. Code § 1641 ("The whole of a contract is to be taken together, so as to give effect to every part, if reasonably practicable, each clause helping to interpret the other."); *Saincome v. Truly Nolen of America, Inc.*, No. 11CV825 JM(BGS), 2011 WL 3420604, at *6 (S.D. Cal. Aug. 3, 2011) (same).  When examined in the context

28

of the entire agreement, it is evident that the arbitration agreement binds *both* parties to arbitrate their claims against the other.

For example, the arbitration agreement begins by stating, "DISYS and Employee agree to the following terms and conditions" (Introduction).  The agreement defines covered claims as "**any controversy or claim** arising out of, or relating to, Employee's employment relationship with DISYS or the termination of that relationship" (Section 1) and concludes by reminding the signatories that "[**b]oth parties** understand that by agreeing to the terms of this Procedure, **both** are giving up any constitutional or statutory right they may possess to have covered claims decided in a court of law before a judge or jury" (Conclusion) (emphasis added).  Various other provisions of the agreement expressly apply to both parties, such as the requirement that an "aggrieved party" provide timely notice to the "other party" (Section 1.F), and the class action waiver requiring that claims "must be brought in the respective party's individual capacity" (Section 3).  Finally, if the agreement did not equally bind both parties, the provision excluding certain claims by DISYS (e.g. Section 1.B) would be nonsensical. The agreement is clearly mutual, which distinguishes this case from *Armendariz v. Found. Health Psychcare Servs*., 24 Cal. 4th 83, 92 (2000), which involved an expressly one-sided contract.[1]

### 2.    The Agreement's Inclusion of Some Claims and Exclusion of Others Does Not Render It Unconscionable

Next, Buchsbaum argues that even if the arbitration agreement facially applies to both parties, it is still effectively unilateral because it "unfairly includes claims that employees are most likely to bring against the employer" and "expressly exempts

---

[1] Buchsbaum also latches onto a term in the arbitration agreement reading, "In the event that the Employee is assigned to work for a client of DISYS, any claim that may be asserted by Employee against the client or its affiliates due to Employee's assignment with the client shall be resolved pursuant to the procedures set forth in this Agreement" (Section 1.A.iii).  However, the fact that this provision specifically states that it only applies to the Employee's claims underscores the fact that the remainder of the arbitration agreement applies equally to Buchsbaum and DISYS.  Further, if this provision were mutual it would unfairly impact the rights of third parties.

1  from arbitration claims that employers typically bring against employees."  (Opp'n pp.

2  6:16 and 7:12.)  Not so.

3       It goes without saying there are many more claims that an individual employee

4  can assert against an employer than vice versa, simply by operation of the many

5  employee protection laws on the books.  Even with that as a backdrop, however, the

6  agreement's list of covered claims expressly includes claims for "breach of any

7  contract," which are arguably the most common claims for an employer to bring

8  against an employee.  The list of covered claims also includes "tort claims" and

9  "claims for violation of any federal, state or other governmental law," which are also

10 claims that an employer could assert against an employee.  Thus, under this

11 agreement, DISYS would be required to arbitrate, for example, claims to recover the

12 value of items stolen or damaged by an employee, or claims against the employee for

13 indemnification arising from sexual harassment of a coworker.

14      As for the list of excluded claims (see Section 2.B), contrary to Buchsbaum's

15 assertions, claims involving workers compensation and unemployment insurance are

16 more likely to be brought by the **employee**, not the employer; they are routinely

17 excluded from arbitration agreements to preserve the employee's right to pursue such

18 claims in the proper administrative forum.  See, e.g., *Dittenhafer v. Citigroup*, No.

19 10CV1779 PJH, 2010 WL 3063127 at *5 (N.D. Cal. Aug. 2, 2010), aff'd., 467 Fed.

20 App'x 594, 594–95 (9th Cir.2012) (holding that an employer may exclude workers

21 compensation and unemployment claims from an arbitration agreement because those

22 claims "normally must be adjudicated via a state administrative proceeding with

23 specific requirements").

24      Finally, other district courts have rejected the argument that an arbitration

25 agreement's exclusion of claims for unfair competition or trade secret violations

26 renders that agreement unconscionable, even though such claims are usually brought

27 by employers.  As the Eastern District Court of California explained in 2012:

28

DEFENDANT'S REPLY ISO ITS MOTION TO COMPEL ARBITRATION AND STAY ACTION PENDING COMPLETION OF
ARBITRATION
                                              CASE NO.: 3:20-CV-00706-BAS-AGS

1  
2  
3  
4  

> The court can conceive of valid reasons, entirely independent of any intent to place the employees at a relative disadvantage or to generate one-sided results, for excluding claims of unfair competition or trade secret violations from the mandatory arbitration provisions of the Agreement. Unlike the type of claims involved in this case, such claims typically arise after the employer-employee relationship has terminated. More importantly, the resolution of such claims has the potential of substantially impacting the rights of third parties.

5  
6  

*Steele v. American Mortg. Management Services*, No. 2:12-CV-00085 WBS, 2012 WL 5349511, at *8 (E.D. Cal. Oct. 26, 2012).  That same logic applies here.

7  
8  
9  
10  
11  
12  
13  
14  
15  
16  
17  
18  
19  
20  
21  
22  
23  
24  

The cases relied upon by Buchsbaum, *Ferguson v. Countrywide Credit Industries, Inc*., 298 F.3d 778, 783 (9th Cir. 2002) and *Ingle v. Circuit City Stores*, Inc., 328 F.3d 1165 (9th Cir. 2003), do not hold otherwise.  The Ninth Circuit's decision to invalidate the arbitration agreements in those cases was based on a number of different one-sided contractual provisions which favored the employer – in *Ferguson*, a fee-splitting provision and a one-sided discovery provision; in *Ingle*, a fee-splitting provision and a one-year statute of limitations provisions – and which are not present here.  Notably, at least one Judge in this District has declined to follow *Ingle*, explaining that the *Ingle* decision was rooted in a "presumption that arbitration provisions in the employment context are substantively unconscionable [which] runs counter to Supreme Court precedent that arbitration provisions should be treated no differently than other contracts."  *Knatt v. J. C. Penney Corporation, Inc*., No. 15CV2516 JM(KSC)), 2016 WL 1241550, at *3 (S.D. Cal. Mar. 30, 2016) (citing cases); see also *Walker v. Countrywide Credit Industries, Inc*. No. 3:03-CV-0684-N, 2004 WL 246406, at *9 (N.D. Tex., Jan. 15, 2004) (disagreeing with *Ferguson* to the extent the Ninth Circuit's holding "rest[s] on suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complainants[.]")  At best, *Ferguson* and *Ingle* carry limited precedential weight.

25  
26  
27  

On the other hand, District Judges in California have chosen to uphold arbitration agreements which exclude the types of claims that are excluded here.  See, e.g., *Steele v. American Mortg. Mgmt. Servs.*, No. 2:12-CV-00085 WBS, 2012 WL

28

1   5349511, at *7–9 (E.D. Cal. Oct. 26, 2012) (re: claims for injunctive relief for unfair

2   competition and/or trade secrets); *Pacaldo v. Halliburton Energy Servs., Inc.*, No.

3   1:12-CV-01078-LJO, 2012 WL 5906653, at *7 (E.D. Cal. Nov. 26, 2012) (re: workers

4   compensation and unemployment compensation claims); and *Montes v. San Joaquin*

5   *Comm'y Hosp.*, No. 1:13-CV-01722-AWI, 2014 WL 334912, at *11 (E.D. Cal. Jan.

6   29, 2014) (re: workers compensation and unemployment compensation claims).

7   DISYS urges this Court to do the same.

8              **3.    The Agreement Permits the Parties to Arbitrate in California**

9              Contrary to Buchsbaum's assertions, the arbitration agreement does not force

10   him to arbitrate in Virginia.  The forum selection clause specifically states that the

11   parties may agree to arbitrate elsewhere.  See Duckwitz Decl., Ex. 1 at Section 1.F.i.

12   DISYS is willing to arbitrate in San Diego County (Buchsbaum's county of residence)

13   and apply California law; thus these provisions are not unconscionable.

14        **C.    Any Unconscionable Provisions Can Be Severed**

15              To the extent the arbitration agreement contains any unconscionable provisions

16   (it does not), those provisions can and should be severed as they are collateral to the

17   agreement and to the case at hand.  See, e.g., *Grabowski v. C.H. Robinson Co.*, 817 F.

18   Supp. 2d 1159, 1179 (S.D. Cal. 2011) (finding three substantively unconscionable

19   provisions could be severed from an arbitration agreement which was not "permeated

20   by unconscionability," thus rendering the agreement enforceable).

21              Buchsbaum identifies three provisions that he contends are unconscionable: (1)

22   language that he believes indicates that the agreement only binds Buchsbaum; (2) the

23   claim inclusion/exclusion provisions; and (3) the choice of law and forum selection

24   provisions.  (Opp'n p. 21.)  As to Buchsbaum's first argument, it is belied by the plain

25   text of the agreement, which (when read in totality) clearly binds both parties (see

26   Section III.B.1, above).

27              As to Buchsbaum's second argument, even if this Court finds that the

28   agreement's claim exclusion provisions are partially or totally unconscionable (they

1  are not), these sections could be severed because Buchsbaum's claims in this case

2  clearly fall within the ambit of the arbitration agreement and do not involve (for

3  example) trade secrets, unfair competition, workers compensation or unemployment

4  compensation benefits.  See *Manning v. Parsons Transportation Group, Inc.* (E.D.

5  Cal., June 13, 2016, No. 1:16-CV-00390-JLT) 2016 WL 3254035, at *9 (noting that

6  the ''issues not covered'' section of an employment arbitration agreement "[is] not

7  relevant to the matter now pending before the Court. Accordingly, the provision may

8  be severed from the agreement."); accord. *Steele v. American Mortg. Management*

9  *Services*, No. 2:12-CV-00085 WBS, 2012 WL 5349511, at *8 (E.D. Cal. Oct. 26,

10  2012) (court not "concerned" about provision permitting employer to unilaterally

11  modify or terminate arbitration, because employer did not attempt to do so).

12      As to Buchsbaum's third argument, the cases are clear that choice of law and

13  forum selection provisions can be severed from an arbitration agreement.  See

14  *Andraos v. Union Cent. Life Ins. Co*., No. CV098815ODWFFMX, 2010 WL

15  11515306, at *6 (C.D. Cal. Jan. 12, 2010) (compelling arbitration within California

16  notwithstanding a venue selection provision providing otherwise); see also *Wilmot v.*

17  *McNabb*, 269 F. Supp. 2d 1203, 1212 (N.D. Cal. 2003) (granting a motion to compel

18  arbitration but striking the venue provision because it was severable from the rest of

19  the arbitration agreement, which was otherwise valid and enforceable).

20      Even assuming *arguendo* that Buchsbaum could show that one or both of these

21  provisions are unconscionable, he wholly fails to establish that these isolated clauses

22  "permeate" the arbitration agreement with unconscionability.  Thus, to the extent

23  either of these two provisions of the agreement are unconscionable (they are not), this

24  Court should sever those provisions and enforce the remainder of the agreement.

25  **IV.   DISYS Is Willing To Mediate Buchsbaum's Claims**

26      Finally, DISYS is willing to mediate Buchsbaum's claims prior to commencing

27  arbitration.  For all the reasons set forth above and in DISYS's original Motion, this

28  Court should overrule Buchsbaum's opposition and compel his claims to arbitration.

1

Dated:  July 6, 2020

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DUANE MORRIS LLP**

By: s/Jennifer A. Kearns
    Jennifer A. Kearns
    Attorneys for Defendant
    Digital Intelligence Systems, LLC