UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BERNARDO BUCHSBAUM,<br>*individually and on behalf of all others similar situated*,<br><br>　　　　　　　　　　　　Plaintiff,<br><br>　v.<br><br>DIGITAL INTELLIGENCE SYSTEMS, LLC,<br><br>　　　　　　　　　　　　Defendant. | Case No. 20-cv-00706-BAS-AGS<br><br>**ORDER:**<br><br>**(1) GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION (ECF No. 18);**<br><br>**(2) STAYING CASE; AND**<br><br>**(3) ADMINISTRATIVELY CLOSING ACTION** |

Presently before the Court is Defendant Digital Intelligence Systems, LLC's motion to compel arbitration. (ECF No. 18.) Plaintiff Bernardo Buchsbaum opposes. (ECF No. 23.) The Court finds this motion suitable for determination on the papers submitted and without oral argument. *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7.1(d)(1). For the following reasons, the Court **GRANTS** Defendant's motion to compel arbitration.

**I.　BACKGROUND**

Defendant "provides temporary staffing and Information Technology ('IT') consulting services to companies." (Compl. ¶ 2, ECF No. 1-7.) Plaintiff worked for Defendant as a Technical Recruiter "from approximately August 2018 until June 2019" as

"an hourly, non-exempt employee." (*Id.* ¶ 13; *see also* Buchsbaum Decl. ¶ 2, ECF No. 23-2.) In doing so, Plaintiff supported one of Defendant's clients, T-Mobile USA, Inc. (*See* Compl. ¶¶ 15, 22(b).) As a condition of his employment with Defendant, Plaintiff signed an Employee Arbitration Agreement on August 13, 2018. (Buchsbaum Decl. ¶¶ 3–4.) The Arbitration Agreement provides:

> Employee agrees that any controversy or claim arising out of, or relating to, Employee's employment relationship with [Defendant] or the termination of that relationship, must be submitted for non-binding mediation before a third-party neutral and, if necessary, for final and binding resolution by a private and impartial arbitrator, to be jointly selected by Employee and [Defendant].

(Arbitration Agreement § 1, Duckwitz Decl. ¶ 2, Ex. 1, ECF No. 18-1.) Further, the Arbitration Agreement contains a class action waiver:

> Any claim must be brought in the respective party's individual capacity, and not as a plaintiff or class member in any purported class, collective, representative, multiple plaintiffs, or similar proceeding ("Class Action"). The parties expressly waive any ability to maintain any Class Action in any forum . . . . The parties understand that they are waiving their right to litigate through a court to have a judge or jury decide their case, and to be a party to a class, collective, or representative action.

(*Id.* § 3.)

On March 4, 2020, Plaintiff filed this action in San Diego County Superior Court. (Compl. 1.) He brings various putative class claims against Defendant for wage and hour violations under California state law, including claims regarding overtime compensation and meal and rest breaks.[1] (*Id.* ¶¶ 31–75.) Defendant answered the Complaint on April 9, 2020. (Answer, ECF No. 1-3.) The Answer does not mention arbitration. (*See id.* ¶¶ 1–17.)

On April 13, 2020, Defendant removed this action under the Class Action Fairness Act. (Notice of Removal ¶ 4.) Like its Answer, Defendant's Notice of Removal does not mention arbitration. (*See id.* ¶¶ 1–10.)

---

[1] Plaintiff also sued T-Mobile, but Plaintiff and T-Mobile jointly stipulated to the company's dismissal on June 4, 2020. (ECF Nos. 17, 19.)

On June 8, 2020, Defendant filed this motion raising arbitration for the first time. (Mot., ECF No. 18.) In a declaration accompanying the motion, Defendant's counsel states she received Plaintiff's personnel records from Defendant around May 14, 2020. (Kearns Decl. ¶ 2, ECF No. 18-2.) Before then, counsel believed Plaintiff had signed an arbitration agreement with T-Mobile, but not Defendant. (*Id.*) Defendant's counsel thus first confirmed Plaintiff had electronically signed the Arbitration Agreement and then brought this motion after conferring with Plaintiff's counsel. (*Id.* ¶ 3.) The motion is fully briefed. (Opp'n, ECF No. 23; Reply, ECF No. 24.)

## II. LEGAL STANDARD

The Federal Arbitration Act ("FAA") makes agreements to arbitrate "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The FAA permits a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration [to] petition any United States District Court . . . for an order directing that . . . arbitration proceed in the manner provided for in [the arbitration] agreement." *Id.* § 4. Upon a showing that a party has failed to comply with a valid arbitration agreement, the district court must issue an order compelling arbitration. *Id.* "A party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

## III. ANALYSIS

There is no question in this case that an agreement to arbitrate exists. And the Arbitration Agreement's broad terms encompass Plaintiff's wage and hour claims. (Arbitration Agreement §§ 1, 3.) Plaintiff, rather, contests enforcement of the Arbitration Agreement on two grounds. First, Plaintiff argues Defendant waived its right to seek arbitration. (Opp'n 10:5–12:28.) Second, Plaintiff argues the Arbitration Agreement is unconscionable. (*Id.* 13:1–21:4.) The Court will consider each ground in turn.

### A. Waiver

Plaintiff argues Defendant waived its right to seek arbitration because Defendant delayed in bringing this motion, acted inconsistently with its right to arbitration, and prejudiced Plaintiff through its lackadaisical conduct. (Opp'n 10:19–12:28.) A party seeking to prove waiver must demonstrate: "(1) knowledge of an existing right to compel arbitration; (2) intentional acts inconsistent with that existing right; and (3) prejudice to the person opposing arbitration from such inconsistent acts." *Newirth by & through Newirth v. Aegis Senior Comtys., LLC*, 931 F.3d 935, 940 (9th Cir. 2019) (citing *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 694 (9th Cir. 1986)). Because waiver of a contractual right to arbitration is not favored, "any party arguing waiver of arbitration bears a heavy burden of proof." *Fisher*, 791 F.2d at 694.

Plaintiff demonstrates the first requirement for waiver but not the other two. On the first requirement, the Court agrees that Defendant had knowledge of the right to arbitrate. Defendant drafted the Arbitration Agreement. And the agreement was kept in Defendant's personnel records where it was retrieved by Defendant's Human Resources Director. (Duckwitz Decl. ¶¶ 2–3.) Therefore, although Defendant's counsel may have been unaware of the Arbitration Agreement for several months, Defendant itself had "knowledge of an existing right to compel arbitration." *See Newirth*, 931 F.3d at 940.

Advancing to the second requirement, Plaintiff does not show Defendant took "intentional acts inconsistent with" its existing right to arbitrate. *See Newirth*, 931 F.3d at 940. "There is no concrete test to determine whether a party has engaged in acts that are inconsistent with its right to arbitrate." *Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). Instead, courts consider whether the totality of the defendant's actions "indicate a conscious decision . . . to seek judicial judgment on the merits of [the] arbitrable claims, which would be inconsistent with a right to arbitrate." *Id.* In other words, "a party acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for

- 4 -

20cv0706

a prolonged period of time in order to take advantage of being in court." *Newirth*, 931 F.3d 935 at 941.

Considering the case law, this second element is not met. Defendant moved to compel arbitration a little over three months after Plaintiff filed this action in state court. This delay does not support a finding of waiver. *See, e.g.*, *Chartwell Staffing Servs. Inc. v. Atl. Sols. Grp. Inc.*, No. 8:19-cv-00642-JLS-JDE, 2020 WL 620294, at *9 (C.D. Cal. Jan. 9, 2020) (finding a three-month delay in filing a motion to compel arbitration "wholly insufficient to support a finding of waiver" and noting that when finding waiver, "the Ninth Circuit identified delays ranging from nine to eighteen months" (citing *Kelly v. Pub. Util. Dist. No. 2 of Grant Cty.*, 552 F. App'x 663, 664 (9th Cir. 2014))).[2]

That said, Plaintiff points to Defendant's failure to mention arbitration in its Answer and Notice of Removal. (Opp'n 11:8–19.) Plaintiff states Defendant similarly did not raise the prospect of arbitration at the parties' Rule 26(f) conference. (*Id.* 11:20–12:4.) This conduct favors Plaintiff's waiver claim, but it is not enough. Plaintiff bears a "heavy burden" in demonstrating waiver, and the totality of Defendant's actions do not rise to a "conscious decision . . . to seek judicial judgment on the merits of [the] arbitrable claims." *See Martin*, 829 F.3d at 1124–25. Although Defendant may have failed to plead its right to arbitrate, Defendant has not pursued a decision on the merits in this case before moving to compel arbitration. *See id.* at 1125–26 (collecting cases). Nor has there been any meaningful litigation or significant discovery. (*See* ECF Nos. 1 to 17.) Therefore, Plaintiff does not show the second element for waiver is satisfied. *Cf. Martin*, 829 F.3d at 1126 (upholding a waiver determination where defendants "spent seventeen months litigating the case," including by "filing a motion to dismiss on a key merits issue" and engaging in discovery).

---

[2] *See also Martin*, 829 F.3d at 1126 (seventeen months); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (two years); *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1068 (C.D. Cal. 2011) (thirteen months).

In the same vein, Plaintiff does not satisfy the final waiver element: prejudice. "To prove prejudice, plaintiffs must show more than 'self-inflicted' wounds that they incurred as a direct result of suing in [] court contrary to the provisions of an arbitration agreement." *See Martin*, 829 F.3d at 1126. Indeed, prejudice results only "[w]hen a party has expended considerable time and money due to the opposing party's failure to timely move for arbitration and is then deprived of the benefits for which it has paid by a belated motion to compel." *Id.* at 1127.

Plaintiff argues prejudice exists because his counsel was "only notified of the Arbitration Agreement and of Defendant's intent to compel arbitration just a few days prior to the Parties' submission of the Joint Discovery Plan and the ENE Statement on May 27, 2020." (Opp'n 12:13–21.) And his counsel "has already spent time and incurred resources drafting and preparing discovery, as well as preparing for the ENE prior to being informed by Defendant's counsel about the Arbitration Agreement, which could have been avoided had Plaintiff been informed of the Arbitration Agreement at the outset." (*Id.* 12:13–21.) This is not a strong showing on the prejudice element. Plaintiff may have expended some time and effort on this case, but not "considerable time and money" that would support a waiver finding. *See Martin*, 829 F.3d at 1127. Nor does Plaintiff show another type of actionable prejudice, such as him being forced to "relitigate a key legal issue" in arbitration upon which the Court had already ruled in his favor. *See id.* at 1128 (noting the prejudice factor is routinely dispositive where arbitration means "the defendants got a mulligan on a legal issue [they] chose to litigate in court and lost").

Accordingly, Plaintiff does not meet his "heavy burden of proof" to demonstrate Defendant waived its right to arbitration. *See Fisher*, 791 F.2d at 694. Therefore, the Court is unmoved by his waiver argument.

### B. Unconscionability

Plaintiff next argues the Arbitration Agreement is unconscionable and cannot be enforced. (Opp'n 12:1–21:4.) "Like other contracts, arbitration agreements can be invalidated for fraud, duress, or unconscionability." *Chavarria v. Ralphs Grocery Co.*, 733

F.3d 916, 921 (9th Cir. 2013). As the party asserting unconscionability, Plaintiff bears the burden of proving the defense. *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015)). "Under California law, a contract must be both procedurally and substantively unconscionable to be rendered invalid."[3] *Chavarria*, 733 F.3d at 922 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000)). The court analyzes "unconscionability on a sliding scale, so that the more substantively one-sided the contract term, the less evidence of procedural unconscionability is required to conclude that the term is unenforceable, and vice versa." *Davis v. Kozak*, 53 Cal. App. 5th 897, 905 (2020).

### 1. Procedural Unconscionability

"The procedural element of the unconscionability analysis concerns the manner in which the contract was negotiated and the circumstances of the parties at that time." *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007) (citing *Kinney v. United HealthCare Servs., Inc.*, 70 Cal. App. 4th 1322, 1329 (1999)). "The element focuses on oppression or surprise." *Id.* (citing *Armendariz*, 24 Cal. 4th at 114). "Oppression arises from an inequality of bargaining power that results in no real negotiation and an absence of meaningful choice." *Id.* (citing *Flores v. Transam. HomeFirst, Inc.*, 93 Cal. App. 4th 846, 853 (2001)). "Surprise is defined as 'the extent to which the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.'" *Id.* (quoting *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1532 (1997)). "The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the

---

[3] The Arbitration Agreement contains a Virginia choice of law clause, but both parties cite to California law for their unconscionability analysis. (Mot. 6:22–8:5; Opp'n 13:1–22:4.) Regardless, in light of the Court's discussion below, the Court is persuaded that California's choice of law framework would lead to the application of California law to this dispute. *See Ruiz v. Affinity Logistics Corp.*, 667 F.3d 1318, 1323 (9th Cir. 2012) (explaining the steps of California's framework, including consideration of whether the chosen state's law is contrary to a fundamental policy of California).

contract or reject it." *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1071 (2003) (citation omitted).

Plaintiff argues the Arbitration Agreement is procedurally unconscionable because it was "mandatorily imposed on Plaintiff as a take-it-or-leave-it condition of employment." (Opp'n 14:14–16; *see also* Buchsbaum Decl. ¶ 2.) Further, "there is nothing in the Agreement itself to indicate that Plaintiff was even given the opportunity to opt-out of the Agreement." (Opp'n 14:20–22.) Defendant does not contend otherwise.

The Court agrees that there is some procedural unconscionability. "It is well settled that adhesion contracts in the employment context, that is, those contracts offered to employees on a take-it-or-leave-it basis, typically contain some aspects of procedural unconscionability." *Serpa v. Cal. Sur. Investigations, Inc.*, 215 Cal. App. 4th 695, 704 (2013); *accord Conyer v. Hula Media Servs., LLC*, 53 Cal. App. 5th 1189, 1198 (2020). Those typical aspects of procedural unconscionability exist here: Plaintiff was offered a take-it-or-leave-it arbitration agreement as a condition of employment, and the unequal bargaining power between Plaintiff and Defendant is "reasonably apparent from the parties' relationship." *See Davis*, 53 Cal. App. 5th at 907. Afterall, "few employees are in a position to refuse a job because of an arbitration requirement." *Armendariz*, 24 Cal. 4th at 115.

That said, "adhesion establishes only a 'low' degree of procedural unconscionability." *Davis*, 53 Cal. App. 5th at 907 (quoting *Serpa*, 215 Cal. App. 4th at 704). And this case is missing the type of conduct that shows a high degree of procedural unconscionability. For example, Plaintiff does not claim he was "lied to, placed under duress, or otherwise manipulated into signing the arbitration agreement." *See Baltazar v. Forever 21, Inc.*, 62 Cal. 4th 1237, 1245 (2016); *see also Carlson v. Home Team Pest Def., Inc.*, 239 Cal. App. 4th 619, 640 (2015) (noting the employee "was threatened with withdrawal of the job offer and faced with the potential of an impecunious future if she insisted on reviewing" the arbitration rules and the employer's dispute resolution policy). Nor does this case involve an arbitration agreement that is unreasonably complex or

"hidden in [a] prolix printed form." *See Gatton*, 152 Cal. App. 4th at 582. The parties' contract is a standalone agreement that was signed by Plaintiff as part of his employment offer. (Buchsbaum Decl. ¶¶ 3–4.) Further, Plaintiff does not claim he lacked sufficient time to review the Arbitration Agreement before signing it. (*See id.*)

In short, Plaintiff has demonstrated a low degree of procedural unconscionability based on the Arbitration Agreement's adhesive nature. He must, then, demonstrate a significant degree of substantive unconscionability to succeed on his unenforceability argument. *See, e.g.*, *Serpa*, 215 Cal. App. 4th at 704.

### 2. Substantive Unconscionability

Substantive unconscionability focuses on the harshness and one-sided nature of the substantive terms of the contract. *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486–87 (1982). "Substantive unconscionability 'may take various forms,' but typically is found in the employment context when the arbitration agreement is 'one-sided' in favor of the employer without sufficient justification, for example, when 'the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration.'" *Serpa*, 215 Cal. App. 4th at 703 (quoting *Little*, 29 Cal. 4th at 1071). Plaintiff claims that several parts of the Arbitration Agreement are substantively unconscionable.

#### i. One-Sided Claim Coverage

Plaintiff argues the Arbitration Agreement is substantively unconscionable because only he is "expressly bound to arbitrate any controversy or claim arising out of the employee's employment relationship." (Opp'n 16:12–22.) He highlights the first section of the Arbitration Agreement, which states, "Employee agrees that any controversy or claim arising out of, or relating to, Employee's employment relationship with [Defendant] . . . must be submitted . . . for final and binding resolution by a private and impartial arbitrator." (Arbitration Agreement § 1.) The Arbitration Agreement then specifically exempts, however, claims brought by Defendant "for injunctive or other equitable relief,

including without limitation claims for unfair competition and the use or unauthorized disclosure of trade secrets or confidential information." (*Id.* § 1(B)(iii).)

Initially, the Court is unpersuaded by Plaintiff's suggestion that the Arbitration Agreement only requires him to submit claims to arbitration. "The whole of a contract is to be taken together, so as to give effect to every part," with "each clause helping to interpret the other." Cal. Civ. Code § 1641. Similarly, a "lack of mutuality can be manifested as much by what the agreement does not provide as by what it does." *Armendariz*, 24 Cal. 4th at 120.

The core arbitration provision here provides that "Employee agrees that *any controversy or claim* arising out of, or related to, Employee's employment relationship" will be submitted to arbitration. (Arbitration Agreement § 1 (emphasis added).) Read in isolation, this clause could suggest that the employee—but not Defendant—is agreeing to submit claims to arbitration. *But see McManus v. CIBC World Markets Corp.*, 109 Cal. App. 4th 76, 100 (2003) (noting arbitration language covering "'[a]ll disputes arising out of your employment' . . . creates a mutual obligation to compel [the employer] to arbitrate any claims against the employee"). The remainder of the Arbitration Agreement, however, confirms that this suggestion is incorrect. For one, the contract later carves out some of Defendant's claims from arbitration, which would be unnecessary if only the employee had agreed to arbitration. (Arbitration Agreement § 1.B.) Defendant also signed the Arbitration Agreement, which is written as a bilateral contract. Further, other provisions in the contract confirm that both parties have agreed to arbitrate certain disputes. (*See id.* § 1.E.ii. ("The burden of proof at arbitration shall at all times be on the party seeking relief."); § 1.F (requiring that "[t]he aggrieved party must give written notice of any claim to the other party"); § 3 (requiring that "[a]ny claim must be brought in the respective party's individual capacity").) Thus, the Arbitration Agreement requires both parties to submit certain claims to arbitration. *See Kozak*, 53 Cal. App. 5th at 915 (rejecting the "broad contention that the entire arbitration agreement lacks mutuality because of the

repeated phrasing 'I agree'" where the agreement was drafted on company letterhead and specifically discussed what either party "must do in order to 'initiate' arbitration").

Plaintiff is correct, however, that the Arbitration Agreement is unfairly one-sided because it excludes Defendant's potential claims for injunctive or equitable relief.[4] "Given the disadvantages that may exist for plaintiffs arbitrating disputes, it is unfairly one-sided for an employer with superior bargaining power to impose arbitration on the employee as plaintiff but not to accept such limitations when it seeks to prosecute a claim against the employee, without at least some reasonable justification for such one-sidedness based on 'business realities.'" *Armendariz*, 24 Cal. 4th at 117. Meaning, Defendant can exclude from arbitration its claims "for injunctive or other equitable relief, including without limitation claims for unfair competition and the use or unauthorized disclosure of trade secrets or confidential information," only if "business realities" justify this exclusion. (*See* Arbitration Agreement § 1.B.iii.)

This issue is not a close call. Defendant provides no evidence regarding the "business realities" that justify the one-sided carve out of Defendant's injunctive and equitable claims against employees like Plaintiff. In parallel circumstances, many courts have found this type of carve out to be substantively unconscionable.[5] And given the abundance of case law on this issue, the Court agrees that the carve out in Section 1.B.iii of the Arbitration Agreement is substantively unconscionable.

---

[4] California law "expressly permits parties to an arbitration to seek preliminary injunctive relief during the pendency of the arbitration." Cal. Civ. Proc. Code § 1281.8. Hence, an arbitration agreement is not substantively unconscionable if it parrots this authorization. *Baltazar*, 62 Cal. 4th at 1248. The Arbitration Agreement's carve out here is not so limited. It broadly includes claims for injunctive or equitable relief—not just provisional remedies that seek to preserve the status quo during an arbitration.

[5] *See, e.g.*, *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 784–85 (9th Cir. 2002); *Davis*, 53 Cal. App. 5th at 917; *Samaniego v. Empire Today LLC*, 205 Cal. App. 4th 1138, 1148 (2012); *Martinez v. Master Prot. Corp.*, 118 Cal. App. 4th 107 (2004); *Mercuro v. Superior Court*, 96 Cal. App. 4th 167 (2002); *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (1997); *O'Hanlon v. JPMorgan Chase Bank*, N.A., No. CV 15-06640 DDP (PJWx), 2015 WL 5884844 (C.D. Cal. Oct. 7, 2015); *McGuire v. JP Morgan Chase Bank, N.A.*, No. C 10-00285 JW, 2010 WL 11587069 (N.D. Cal. July 8, 2010).

### ii.     Forum Selection and Choice of Law Provisions

Plaintiff next argues that the Arbitration Agreement's forum selection and choice of law provisions are substantively unconscionable. (Opp'n 18:19–20:18.) The Arbitration Agreement recites that Defendant's principal place of business is in McLean, Virginia. (Arbitration Agreement 1.) Further, arbitration is to "take place in McLean, Virginia, unless an alternative location is chosen by the mutual agreement of the parties." (*Id.* § 1.F.i.) "In reaching a decision, the arbitrator shall apply the governing substantive law applicable to the claims, causes of action, and defenses asserted by the parties as applicable in the State of Virginia." (*Id.* § 1.F.iii.)

To support his argument, Plaintiff points to California Labor Code section 925, which provides:

> (a) An employer shall not require an employee who primarily resides and works in California, as a condition of employment, to agree to a provision that would do either of the following:
>
> > (1) Require the employee to adjudicate outside of California a claim arising in California.
> >
> > (2) Deprive the employee of the substantive protection of California law with respect to a controversy arising in California.

Cal. Labor Code § 925(a). Section 925 does not apply if the employee is represented by counsel "in negotiating the terms of an agreement to designate either the venue or forum." *Id.* § 925(e). Any contractual provision that violates this statute "is voidable by the employee." *Id.* § 925(b).

Of course, in federal court, forum selection provisions are governed by federal law. But the outcome is the same. A forum-selection clause is unenforceable "if enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision." *Doe 1 v. AOL LLC*, 552 F.3d 1077, 1083 (9th Cir. 2009) (quoting *M/S Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 17 (1972)). "Section 925 expresses California's strong public policy against forum-selection clauses in

employment agreements." *Bromlow v. D & M Carriers, LLC*, 438 F. Supp. 3d 1021, 1029 (N.D. Cal. 2020). Defendant does not dispute that Plaintiff resided and worked in California. Therefore, in light of California Labor Code section 925, the Arbitration Agreement's forum selection provision is unenforceable.

The choice of law provision meets the same fate. Because it requires application of Virginia's substantive law to Plaintiff's employment claims, the provision "[d]eprive[s] the employee of the substantive protection of California law with respect to a controversy arising in California." *See* Cal. Labor Code § 925(a)(2). Hence, the choice of law provision is unenforceable "for the same reasons" as the forum selection provision. *See, e.g.*, *Karl v. Zimmer Biomet Holdings, Inc.*, No. C 18-04176 WHA, 2018 WL 5809428, at *4 (N.D. Cal. Nov. 6, 2018).

Accordingly, the Arbitration Agreement's forum selection and choice of law provisions are unenforceable. The provisions were also voidable by Plaintiff when the contract was written by Defendant and agreed to by the parties. Ultimately, in these circumstances, the Court agrees that the forum selection and choice of law provisions are substantively unconscionable as well.

Overall, Plaintiff demonstrates a low degree of procedural unconscionability and a high degree of substantive unconscionability with respect to three provisions of the Arbitration Agreement: its carve out of Defendant's claims for injunctive or equitable relief, its forum selection provision, and its choice of law clause. The Court finds that Plaintiff has met his burden to show these three provisions are unenforceable in light of his unconscionability defense.

### 3. Severance

Although Plaintiff shows several provisions of the Arbitration Agreement are unenforceable, that does not mean the Court must refuse to enforce the entire contract. California Civil Code section 1670.5(a) provides:

//
//

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

The California "Supreme Court has interpreted this provision to mean that if a trial court concludes that an arbitration agreement contains unconscionable terms, it then 'must determine whether these terms should be severed, or whether instead the arbitration agreement as a whole should be invalidated.'" *Lange v. Monster Energy Co.*, 46 Cal. App. 5th 436, 452–53 (2020) (quoting *Gentry v. Superior Court*, 42 Cal. 4th 443, 473 (2007)). "[T]he strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement: Although 'the statute appears to give a trial court discretion as to whether to sever or restrict the unconscionable provision or whether to refuse to enforce the entire agreement[,] . . . it also appears to contemplate the latter course only when an agreement is 'permeated' by unconscionability.'" *Lange*, 46 Cal. App. 5th at 453 (alterations in original) (quoting *Roman v. Superior Court*, 172 Cal. App. 4th 1462, 1478 (2009)).

Plaintiff argues severance is not appropriate because the Arbitration Agreement is permeated with unconscionability. (Opp'n 20:22–22:4.) To determine whether unconscionability permeates an arbitration agreement, courts have considered several factors: (1) whether there are multiple unconscionable provisions; (2) whether the central purpose of the contract is illegal; and (3) whether the court can eliminate the unconscionability from the contract by striking or restricting provisions—instead of rewriting or reforming the agreement. *See, e.g.*, *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1272–73 (9th Cir. 2017) (citing cases); *see also Armendariz*, 24 Cal. 4th at 124–25.

To illustrate, in *Armendariz*, the California Supreme Court determined severance was not appropriate for two reasons. First, the arbitration agreement contained two unlawful provisions: one which made the agreement wholly unilateral because only employees were required to arbitrate their claims and another that limited employees'

damages "to the amount of backpay lost up until the time of arbitration." *Armendariz*, 24 Cal. 4th at 121, 124–25. These provisions demonstrated "a systematic effort to impose arbitration on an employee not simply as an alternative to litigation, but as an inferior forum that works to the employer's advantage." *Id.* at 124. Second, the agreement's unconscionable terms could not be easily severed. Rather, the provision limiting the agreement to only the employee's claims would have had to be rewritten to include the employer's claims. *Id.* at 124. In other words, the trial court would have had to "reform the contract, not through severance or restriction, but by augmenting it with additional terms." *Id.* at 124–25.

The Court finds severance is appropriate here for several reasons. Initially, the Court notes the contract contains a severance clause. It provides: "Each provision of this Agreement shall be considered severable such that if any provision or clause is deemed to be illegal invalid or otherwise unenforceable, this shall not effect or impair any other provision of this Agreement." (Arbitration Agreement § 4.) *See Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1179 (S.D. Cal. 2011) (considering severability clause); *see also Lang v. Skytap, Inc.*, 347 F. Supp. 3d 420, 433 (N.D. Cal. 2018) (same).

Further, each unconscionable provision can be severed from the Arbitration Agreement without adding additional terms to the contract. The Court can sever the choice of law and forum selection provisions by eliminating the first sentences of Sections 4.E.iii and 4.F.ii of the Arbitration Agreement. *See Lang*, 347 F. Supp. 3d at 433 (eliminating forum selection and choice of law provisions that were "easily severable"); *Galen v. Redfin Corp.*, Nos. 14-cv-05229-TEH, 14-cv-05234-TEH, 2015 WL 7734137, at *10 (N.D. Cal. Dec. 1, 2015) (severing choice of law and related forum selection provisions); *Haisha Corp. v. Sprint Solutions, Inc.*, No. 14-cv-2773-GPC(MDD), 2015 WL 224407, at *9 (S.D. Cal. Jan. 15, 2015) (same). The Court can also sever the provision that carves out Defendant's claims for injunctive or equitable relief. Because this provision is written as an exception to the parties' agreement to arbitrate any disputes arising out of Plaintiff's employment, the clause can be removed without destroying the agreement to arbitrate. (*See*

Arbitration Agreement § 1, § 1.B.iii.)  *See Manning v. Parsons Transp. Grp., Inc.*, No. 1:16-cv-00390-JLT, 2016 WL 3254035, at *9 (E.D. Cal. June 13, 2016) (explaining that severance was possible in light of "a specific provision identifying 'issues not covered' that the Court may sever from the agreement to address the lack of mutuality implied by the claims excluded from the EDR Program").  Consequently, this case is not one where the Court "must reform the contract by augmenting it or otherwise rewriting the parties' agreement, which of course [it] cannot do."  *See Conyer*, 53 Cal. App. 5th at 1199.

Finally, although there are multiple unlawful provisions in the Arbitration Agreement, this fact alone does not mean the agreement is permeated with unconscionability.  *See Poublon*, 846 F.3d at 1273 (explaining that California courts have not adopted a "per se rule" that the "agreement is necessarily permeated by unconscionability if more than one clause in the agreement is unconscionable or illegal").  And in light of all the agreement's terms, the Court finds the contract before it is not saturated with unconscionability.  The Court is also mindful of "the liberal federal policy favoring arbitration."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

Because the Court finds the Arbitration Agreement is not permeated with unconscionability, severing the problematic provisions from the contract under California Civil Code section 1670.5(a) is appropriate.  The Court thus ultimately rejects Plaintiff's unconscionability defense to enforcement of the Arbitration Agreement, and the Court will compel arbitration upon severing the three problematic clauses from the contract.

## IV. CONCLUSION

In light of the foregoing, the Court **GRANTS** Defendant's motion to compel arbitration (ECF No. 18).  Specifically, the Court severs the choice of law, forum selection, and claim carve-out provisions from the Arbitration Agreement that are discussed above.  The Court also **ORDERS** the parties to proceed to arbitration in California in the manner provided for in the Arbitration Agreement.  *See* 9 U.S.C. § 4.  In addition, the Court **STAYS** this action.  *See id.* § 3.

Last, the Court directs the Clerk of Court to **ADMINISTRATIVELY CLOSE** this case. The decision to administratively close this case pending resolution of the arbitration does not have any jurisdictional effect. *See Dees v. Billy*, 394 F.3d 1290, 1294 (9th Cir. 2005) ("[A] district court order staying judicial proceedings and compelling arbitration is not appealable even if accompanied by an administrative closing. An order administratively closing a case is a docket management tool that has no jurisdictional effect.").

**IT IS SO ORDERED.**

**DATED: December 2, 2020**

Hon. Cynthia Bashant
United States District Judge